on to the next case on the calendar, that's Garlick versus Lee. Let me make sure counsel are on the line. Mr. Weiss? Yes, good morning, Your Honor. I hope you can see and hear me okay. Yes, very good. And Mr. Bova? Good morning, Your Honor. Good. All right. We can see and hear you well also. So, Mr. Weiss, you've got 10 minutes, so does Mr. Bova. Mr. Weiss, how much rebuttal are you reserving? Three? Three minutes, please, Your Honor. Okay. So, three minutes of rebuttal, so that gives you seven out of the gate. You may proceed. Thank you, Your Honor. May it please the Court, and I'm joined this morning by my co-counsel, Robert C. MacGyver, who handled the response to the petition before the District Court. Your Honors, the District Court erred in extending habeas relief. Departing from every other federal court in the nation that has considered this issue, the District Court's outlier decision clearly—incorrectly concluded that Petitioner had a clearly established constitutional right to confront the author of an autopsy report. Yet, as Petitioner observed in his cert petition from 2017, the lack of clear guidance from the Supreme Court addressing autopsies has led the lower courts to become intractably divided over this question. Can I— It was improper. I'm sorry. Yes? I guess the question I have for you is, did the State Appellate Division rule on the basis of the uncertainty with respect to autopsy reports, or did it rule on a ground that clearly had been rejected by the Supreme Court in its Confrontation Clause case? Your Honor, I think what the First Department's decision reflects is a faithful attempt to in light of the uncertainty after Melendez-Diaz and Bullock coming, and especially following Williams. The court in Williams obviously rested on certain factors that would have supported the court's ruling here. Here's the problem, as I see it. I mean, what the Appellate Division said in 2016 is that the autopsy report was not testimonial since it did not link the commission of the crime to a particular person. Now, that's not the Supreme—that's not the law from the Supreme Court, is it? Your Honor, we believe that this represents a reasonable interpretation, particularly in light of Williams, in light of the outcome there, and especially Justice Thomas' concurrence, where he would have found that the report—he would have found the report in this case was non-testimonial on the basis that it was unsworn. The report in this case was unsworn? Correct, Your Honor. The report in this case was unsworn. It had a—affixed to the front was a business record certification, but the report itself was unsworn. Dr. Maloney did sign it in two different spots, but that was merely for the purpose of identifying herself as the enemy who performed the autopsy and the date on which she performed it. It does not bear the certain hallmark of— He signed the report, but for a purpose other than to attest that it's—to its contents. Is that what you're saying? I'm sorry, Your Honor. Can you repeat the question? That it is signed and it is certified, but the signatures and the certifications don't have anything to do with the contents. People are certifying and attesting their name to other aspects of the report other than its substance. That's correct, Your Honor. It's not an attestation to the underlying accuracy of the contents. It's being signed for the other purposes that I just described. And another notable difference here is that at trial, Dr. Ellie was applying her training and qualifications as an expert to offer an independent medical conclusion that was thoroughly subjected to cross-examination. But the report described the physical condition of the body in terms of the location of the wounds and the fact that there was a major bleed-out. How can she testify to something that—I mean, it's curious. It's unsworn. So, it's a business record as to the physical condition of the body and admissible because it identifies all that information from which then an expert can draw a conclusion? That's correct, Your Honor. And that fully comports with the result in Williams. And the Supreme Court has done nothing to limit the— Didn't the autopsy report the evidence that established that he had a knife? I'm sorry, Your Honor? Didn't the autopsy report the evidence in this trial that established that the defendant had a knife? Well, Your Honor, to your point, any error here would have been harmless because there was no dispute as to the cause of death and the— We know the cause of death because of the autopsy report, right? We know that he was stabbed because of the autopsy report. Well, but in addition to the autopsy report, Your Honor, we also know he was stabbed because the incident was caught on video. Well, but the knife doesn't show up on the video, does it? The jury could have concluded from watching the video that the victim died of knife wounds to the That's not the question I asked you. Does the knife show up on the video? The knife does not show up on the video, no, Your Honor. Well, so how does the jury conclude that he was stabbed if the knife— it shows an interaction between him and the fighting in some way, but it doesn't show him stabbing? Well, Your Honor, under the circumstances here, it was appropriate for the jury to— for the doctors who rely on hearsay and offer her opinion as the cause of death. The Supreme Court has not said that it's impermissible for an expert to give an opinion that's based on hearsay, and that is fully consistent with Williams. And this is why all the cases that— Why aren't we looking at this under Melendez-Diaz and Bull coming in line? Is that it or what? Well, Your Honor, because— I don't know that Justice Thomas's concurrence is the deciding matter here. Isn't Melendez-Diaz and Bull coming where the action is here in terms of what the standard is? Well, Your Honor, I would note that autopsy is presumed from the reports at issue in Melendez-Diaz and Bull coming, and the lower courts abide— It seems to me the question is whether the primary purpose is for the prosecution, and that's easily discernible from Melendez-Diaz and Bull coming, isn't it? Yes, Your Honor, but as the court in the First Circuit found, Hensley, it's unclear what the primary purpose test is going to look like in the realm of autopsy reports. A primary purpose test has not been articulated, and I don't— Because the Supreme Court in Bull coming told us that copying down the readout of a glass chromatograph machine to determine someone's blood alcohol content is still a testimonial statement, but an autopsy report in which someone investigates the body and determines that there was a stabbing death and involves what seems to me more human judgment than reading off the results of the chromatograph machine, why would that present different issues pointing in the direction of maybe that would be admissible if the blood alcohol content report is not? Okay. Look, Your Honor, this is the failure to extend argument that the First Circuit and numerous other courts cited in my book— That's exactly what I'm saying. Why is it an extension if there's even less of an argument that there isn't a testimonial statement here with respect to an autopsy report than there would be for the readout of a glass chromatograph machine? That's correct, Your Honor, because the report here, it does not identify anybody. The reports in those other two cases were dispositive of criminality on their face. They were simply measurements essentially parroted to the jury. Here, the medical examiner exercised a degree of independent judgment by providing her independent conclusions and opinions. She's required to do by the county law. The county law, clearly, New York law, clearly requires a medical examiner to determine whether in her opinion a crime has been committed and to report it then and deliver the autopsy report to the district attorney if that's the case. It seems to me a primary purpose of an autopsy is to determine whether a crime has been committed. Why does that fit squarely with involve coming in Melinda's case? Well, certainly, Your Honor, I would agree that there's definitely an element of foreseeability here, but foreseeability has never been a dispositive factor. Are you telling me that if the medical examiner had been told there was a named suspect, then, I mean, now it's starting to sound like the appellate division. There was a named suspect that would be testimonial, but because there's not a named suspect and the medical examiner is just deciding kind of whether there is or is not a homicide here, that that's not testimonial? Your Honor, in the absence of Supreme Court precedent, we don't really know the import of that factor, but the habeas courts that have waited in the issue have rejected attempts  All of your cases on habeas are all pre-Melinda's Diaz, and your subsequent cases, a couple of them are direct appeals, so I'm not certain that the clearly established issue was the First Circuit is the only case you've really got that's on that Hensley, right? Your Honor, our brief states a number of habeas courses that consider the issue post-Williams. I'm talking post-Melinda's Diaz. Post-Melinda's Diaz, yes. All right, Mr. Weiss, let me just come back to something. Sure. I will agree with you that this area of law is confusing and the Supreme Court has not been crystal clear, but is there any way you can say that a determination by the appellate division that the autopsy report was not testimonial because it didn't link the commission of crime to a particular person was a fair understanding of Supreme Court precedent? Can you really say that? That was expressly rejected by the Supreme Court before November of 2016, right? Well, Your Honor, it was rejected in the context of Melinda's Diaz and Bullcoming, where the reports were prima facie evidence of criminality. In this case, we're happening after Melinda's Diaz and Bullcoming, but before Williams, there will be a violation of clearly established Supreme Court precedent. And your position is just that Williams makes it so confused that we shouldn't even rely on Melinda's Diaz and Bullcoming anymore. Is that your position? No, Your Honor. Williams makes clear that it was not clearly a violation of Supreme Court precedent that this testimony was admitted because the affidavits were unsworn. In this case, the autopsy report was admitted as evidence, unlike Williams. This was a jury trial rather than a bench trial, unlike Williams. Correct, Your Honor. So at trial, the people merely proposed— Well, it's the fact pattern at Williams that it seems like it's an exception to Melinda's Diaz, just it doesn't apply here. Well, no, Your Honor, the decision in Williams rested on certain factors that certainly supported the appellate division's determination here, the permissibility of basis testimony and the nature of this report being unsworn. And I just want to get back to your question regarding whether the report was admitted into evidence. At trial, the people proposed that it be certified as a business record and not admitted into evidence. Defense counsel opposed and requested that the report be admitted in its unredacted form into evidence. And he relied on it extensively to cross-examine the doctor as well as during summation, where he argued that the shallow depths of certain of the wounds tended to negate the homicide attempt. The defense objected at introducing any of it, even as basis testimony or as a business record, and then after losing on that, the defense said, well, as long as you're going to admit it over my objection, I think it should be in evidence so I could cross-examine on it on the basis of looking at the document, right? That's correct, Your Honor. Okay. All right, Mr. Weiss, all good things must end. You do have a couple of minutes to rebuttal, but we'll now hear from Mr. Bova. Thank you. Good morning, Mr. Bova, Matthew Bova for Petitioner. The analysis starts and ends with Melendez-Diaz and Bullcombing. The clearly established law comes from those decisions, and I want to go directly to the point that Judge Sullivan was making regarding the text of the appellate division decision. The appellate division's decision was unreasonable and contrary to Melendez-Diaz and Bullcombing because it applied a standard that the Supreme Court has clearly and unequivocally invalidated. When the appellate division held that the report was not testimonial because it did not link the commission of the crime to a particular person, what the court did was apply a standard that, as the district court held, was invalidated in 2010, six years before the appellate division decided this case. What Melendez-Diaz held at 313 and 314 of the opinion, an entire subsection is committed to invalidating the argument that Massachusetts made there, that Massachusetts argued these reports don't prove who did it. They're not accusatory of Mr. Melendez-Diaz. Instead, they prove what the substance was. They're not inherently inculpatory, and they're not accusatory. What the Supreme Court said was that analysis, that limitation finds no support in the case law of the United States Supreme Court. Instead, what the court said was that if the statement is testimonial, then it is inadmissible regardless of whether or not it is directly accusatory or regardless of whether or not it proves identity. There's one category of witnesses, as far as the Confrontation Clause goes, and this is exactly what Melendez-Diaz held. One category, testimonial witnesses, then the testimony is inadmissible. There's no such thing as— So, Mr. Baldwin, I'm sorry to interrupt you, but if we were to agree with you that the Appellate Division's decision was contrary to clearly established federal law for the reasons you just articulated, that doesn't end it, though, right? Then, basically, it basically then falls on the federal court to decide whether or not this is, in fact, testimonial, right? Yes, Your Honor. If the decision under Lafler v. Cooper and under Williams v. Taylor, if the decision is contrary to clearly established law, then de novo review applies. And I think that either this legal error in this decision either makes this decision contrary to clearly established law or, as the district court held, an unreasonable application of clearly established law. So, I was going to ask you to move to, then, the de novo and whether it's testimonial, unless any of the other judges have questions about the first part, about— I have a question, which is opposing counsel said that, actually, this would be admissible under Justice Thomas' theory in Williams because it wasn't sworn. My understanding is that there was a signed affidavit and a notarized stamp attached to it, but he's saying that those certifications were for a different purpose than the substance of the report. Do you agree with that? No, Your Honor. At A276, which is the beginning of the report, the medical examiner certifies that she performed the autopsy on the body of Gabriel Sherwood. Then, she lays out her conclusions in great detail. Then, at the end of the report, the report is signed. So, this is a certified report signed and as formal as can be. This is a solemn, formal document that is certifying that the truth of the contents of the report. The suggestion that a signature at the end of a formal government document does not certify the truth of the document strains the ruling. That's the same thing as saying that if someone signs a brief or someone signs an official, formal government document, all they're doing is signing their name but not actually attesting to the truth of what they just said. That's not how signatures work. This was a certified document that the medical examiner is certifying that this is true. So, that suggestion fails. And I think more fundamentally, though, as Bullcoming said, we're not going to engage in that kind of hyper, that kind of hyper-technical analysis because that would create an easy out for the government. As Bullcoming, as the majority opinion in Bullcoming said, if we focus on- No, I understand that. It does seem to make a difference to Justice Thomas in Williams. So, I wanted to know your position on applying his view in that case to this one. Well, I think that under Justice Thomas's view in Williams, where he's requiring a passes that test, but more importantly, Justice Thomas's concurrence is the decision of a single justice. And under AEDPA, what we're looking at is the clearly established law from the majority of the Supreme Court, not the decision of a single justice concurring. So, as to the application of the clearly established standard, which is not what the Appellate Division standard was, but is instead the primary purpose test, there's no reasonable argument in this case on these facts that this report was anything other than testimonial. A body is delivered to the medical examiner. The medical examiner is informed that the victim was stabbed. Then, and there are wounds on the body. At that point in time, the co-defendant has been arrested and charged with murder. And Mr. Garlick has been identified as the suspect. The medical examiner then proceeds to perform the autopsy, concludes that the cause of death was in fact homicide by stabbing to the left chest, then writes up the report with those conclusions. Then, a month later, when Mr. Garlick has already been indicted, he formally signs it, he finalizes it, and under the county law, under New York state law, he transmits it to the district attorney's office. The primary purpose of this report was to codify crucial evidence for a criminal prosecution. The district attorney is basically saying and strawmanning our argument by saying what we're really saying is that autopsy reports are always testimonial. And I think that that was kind of the mistake that Hensley, the first circuit decision, made too. But that's not what we're talking about here. The question is not whether autopsy reports are always testimonial. The question is whether on these facts, these very compelling facts, as the district court found, that this report was testimonial. And on these facts, the report absolutely was testimonial. So I'm sorry, so you're relying on a primary purpose test? So you're saying that if there hadn't been a suspect identified, then maybe it would not have been a testimonial? The autopsy report might not have been testimonial? No, we would still be arguing that under the primary purpose test, even if the suspect had not been formally identified, the primary purpose, because everyone knew that this was the homicide. Everyone knew that the cause of this death was homicide. So everyone knew this wasn't a suicide. This was an accident. So everyone knew that once that medical examiner knew that once she put pen to paper, once she signs that document. But is your position that if the autopsy report had been conducted before, like if the body had been brought to the person to perform the autopsy before anyone knew that it was a homicide, and so nobody knew whether there was going to be a proceeding and they did the autopsy, if later there was a proceeding, because it turned out that the cause of death was a stabbing, and this report was introduced to prove that it was a stabbing against the defendant, it might not be testimonial in that circumstance? Is that your position? Well, I think that that is a different case, and that's basically what this court confronted in United States v. James. Because under those circumstances, it's not clear that the report is going to be serving as evidence in a criminal case. In those circumstances, when the medical examiner concludes, well, this was likely suicide or this was likely accident, then that report is not geared towards criminal prosecution. But that is absolutely not this case. And I think it's really important that the government does not deny that. The county law vests with the medical examiner a responsibility to determine if they think the cause of death has some implication of a crime, and if they do, then they have the obligation under the county law to transmit the report to the district attorney. It would seem to me that inherently then they recognize they have a responsibility that they may be beginning a criminal prosecution. The fact that the identity is not known, I don't know how that becomes determinative, but they sort it out. I mean, anyone who dies and hasn't been in a hospital within a certain period of time ends up having an autopsy. That's the problem when they say primary purpose. It's hard to figure out whether the Supreme Court's employing. And that's what I'm going to ask you. Do you think this is a clearly established rule or do you think there's some vagary in it that's causing these difficulties of pinning it down? No, Your Honor, it is a clearly established rule. And the rule started with Davis. Davis reiterated the primary purpose test to establish or prove past events potentially relevant to later criminal prosecution. Bryant, 2009, repeats the same exact standard. When they talk about it, isn't that the primary purpose of the introduction of the evidence at trial of the report? The primary purpose is to prove some facts with respect to the defendant that show that the defendant is guilty. But you're assumed to be talking about the primary purpose by which the people who compiled the report compiled it. That seems different to me. Oh, yes, Your Honor. The primary purpose test is focusing on the declarant's purpose. Viewed objectively under Davis, under Bryant, under Bullcoming, under Melendez-Diaz, viewed objectively was the primary purpose of the declarant to create a record that will prove facts that would be potentially relevant for trial. And under these compelling facts, there is no reasonable argument that that test is not satisfied. And therefore, the district court correctly granted the writ as the appellate division's decision was an unreasonable application of and contrary to clearly established Supreme Court precedent. Mr. Bova, let me just follow up on something Judge Wesley asked. I mean, given the nature of autopsy reports, at least in this state, when would an autopsy report not be testimonial in your view? In the circumstances laid out, in the circumstances of United States v. James, this court's decision. When there is no criminal prosecution contemplated at the time of the report, when it looks like it's been a suicide or looks like it's an accident, under those circumstances, there is no indication that the primary purpose of codifying those conclusions in a formal document is for prosecution. The primary purpose is to comply with the law, right? Well, that's true. That's the same thing that's true in Melendez-Diaz and Bulk Cumming too. Anytime a government agent is creating these documents, they're complying with the law. But the question is, are they complying with the law in a way that indicates that the document itself is going to be used in a criminal case? Yes, the fact that they're complying with the law is one thing. But the ultimate question is, in writing what they're writing, are they engaging in, are they writing something that they know is going to be used in a criminal case? So if a medical examiner had been led to believe that this was a suicide and then conducted an examination of the body and made whatever conclusions about the state of the body in accordance with that assumption, and then they could take the report and introduce it against your client at trial because the person who wrote the report didn't believe it was being compiled for the purpose of a prosecution. Yes, Your Honor. And the same thing would be true in Melendez-Diaz and Bulk Cumming. If in those cases the analysis found that it was in fact sugar, for example, that might be a different case as opposed to cocaine. Because then at that point in time when the primary purpose of the declarant at the time that the report is written is not necessarily going to be to create a record for trial because possession of sugar is not a crime. But that's not this case. In this case, all signs indicate that this report is geared towards prosecution. And if I could, I just want to quickly address this point about basis. The government has never argued that this report was introduced for anything other than the truth of the matter asserted. This is the first time that they're arguing this point. Instead, the report has always come in for the truth of the matter asserted. What happened at the trial was that the report is introduced for its truth. It's introduced as Exhibit 1, unlike in Williams where there's no document introduced at all. And then the medical examiner comes along, repeats the conclusions in the report, repeats all the observations about stab wounds, about the depth of wounds, about the number of wounds, and ruling out blows to the head as the cause of death, which was important in this case. So the medical examiner comes, Dr. Eli, the surrogate witness, just parrots what's in the report and then says, I agree with the conclusions. So this report came in for its truth. It was used for its truth. And the prosecution hammered it home for its truth, repeatedly relying on it in summation. At page 452, 454, and 460 of the transcript, the prosecutor is emphasizing the conclusions in this report. It came in for its truth. It was testimonial. And under Crawford and its progeny, the Constitution's command is clear. When you introduce a testimonial hearsay report, you have to bring in the declarant. The failure to do so here was a violation of the Confrontation Clause. And the Appellate Division's decision was an unreasonable application of clearly established law. So if Dr. Eli had just looked at the report and photographs that depicted the wounds, you know, photographs that had little rulers next to them to show the depth of wounds, that would be OK for her to rely on that in forming her own opinion. Is that what you're saying? That could, no. I mean, I don't think that that would be constitutional, because then the only basis for that conclusion is testimonial hearsay. But this court doesn't have to go there, because in this case, the report comes in and the contents are conveyed directly to the jury. And without the testimonial hearsay in that report, Dr. Eli has no testimony. It wasn't as if the government proffered this witness and said, well, she's going to offer an independent conclusion. She doesn't need the autopsy report. Dr. Eli needed the autopsy report. That was how she was proffered. And that was exactly how the report came in. It came in as the testimonial hearsay foundation for her to come in and repeat the conclusions in the report and then tell the jury that the cause of death was homicide and not blows to the head. All right. Well, thank you very much. We'll now hear from Mr. Weiss for a rebuttal. What did we say, Mr. Weiss? Is it two minutes or three? Three minutes, please, Your Honor. That's right. I'm sorry. I lost my page, but go ahead. Thank you, Your Honor. I just want to clarify something from earlier. The appellate division's decision did not rest solely on the fact that it didn't identify a particular person, but rather the court's opinion explicitly cites the First Department's ruling in Hall, which in turn relies on Acevedo, where the court undertook a more comprehensive analysis of this issue. And it explicitly cited a number of factors that drove its determination, namely that the report was unsworn, that the witness testified to independent conclusions that were subject to meaningful cross, and moreover, that OCME operates under a much more expansive mandate. It's required under law to perform autopsies, not only in instances of homicides, but a variety of other situations as well. Additionally, my opponent relies on James to somehow say that that's dispositive of clearly established law here. But if anything, James highlights the lack of certainty in the law and that this issue has engendered fair-minded disagreement. What's notable about James is that the entire court was mindful of the lower court split, and Justice Eaton disagreed with the majority. He would have found that the report at issue there was testimonial, but he agreed under the more searching, plain-error inquiry that the issue was unsettled. So we believe that this supports our position. Last question about that. So in James, it does seem like our court thought that there was some confusion on this issue. But of course, the standard we're applying here is that whether the state decision is an irreducible application of clearly established Supreme Court precedents. So what exactly is the role of James in our analysis here? Well, it's consistent with the other courts that have considered it at this time, including this court in which I'm specifically referring to footnote two, where it raised questions about whether the law was clearly established. And the divide that was present during James has not abated in the years following. Courts are still hopelessly divided over what treatment to give autopsy reports. And my opponent understandably focuses heavily on the merits, but in the absence of a clearly defined rule by the Supreme Court, we don't know the import of all these factors and how they fit into the context of the overall rule. And I just want to make one last point. The people did not rely heavily on the autopsy report at all. In fact, during summations, the prosecutor essentially said to the jury that all you need to do is watch the video here to determine what happened. And that was entirely correct, because the video does show an object repeatedly being thrown into the victim's chest. There was no debate as to the cause of death, and it would have been sufficient alone to support this verdict. And defendants also admitted to stamping the victim. Also, that was never up for debate either. But given that ECA review is confined to violations of law that are clearly established, and given the First Circuit of Hensley, this court's notation in Wall Street Vega, the law as to allow for a grant of autopsy relief. Can I just go back to something you said? I mean, this is a quote from the summation. Joanna is pounding him. She's punching and kicking him. And we know from the medical examiner, none of that contributed in any way to death. That seems like a pretty strong reliance on the autopsy report, which was the first witness and the first exhibit introduced in the trial, right? Yes, Your Honor. And I believe that those remarks were made in response to comments the defense counsel made in his summation. Unlike people, defense counsel relied heavily on the autopsy report to show that the petitioner lacked the required mens rea to commit the crime. So under those circumstances, I think the prosecutor was just merely responding to a comment. I know that responding to a comment means you didn't rely on it in your summation, though. Right. Go ahead, Your Honor. I said it's not clear to me why responding to an argument is not relying on a piece of evidence in the summation. Yes, Your Honor. But be that as it may, independent of the report, the video would have eminently justified the jury's verdict here, given that it clearly depicts the homicide. All right. And I would also note that Joanna was charged with acting in concert with petitioner. In an exercise of prosecutorial discretion, she became a cooperating witness and was allowed to replete to a lesser charge. But legally, she would have been just as responsible for the murder as petitioner. All right. So I think that puts us over consistently in every argument. But nonetheless, there were a lot of questions, and this was useful. So thank you both. We will reserve decision. Thank you both. Thank you, Your Honor.